UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:12-CR-00097-18 (KAD) |
| v. | |
| TYLON VAUGHN | September 11, 2020 |

**MEMORANDUM OF DECISION RE: DEFENDANT'S
EMERGENCY MOTION FOR COMPASSIONATE RELEASE (ECF NO. 1272)**

Kari A. Dooley, United States District Judge:

Defendant Tylon Vaughn moves pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for a sentence reduction and an order of compassionate release due to various health conditions that he asserts render him at higher risk for death or serious injury should he contract COVID-19. The Government acknowledges that the Defendant has established extraordinary and compelling reasons for his release, raises no current concerns regarding the Defendant's danger to the community, and defers to the Court with respect to the application of the Section 3553(a) factors to this motion. For the reasons that follow, the motion is GRANTED.

**Background**

On July 30, 2014 an amended judgment was entered in this matter and the Defendant was sentenced to 144 months of incarceration on one count charging him with conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and 144 months of incarceration on each of two counts for possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (ECF Nos. 1111, 1118.)

The sentences were ordered to run concurrently to each other.  To date, the Defendant has served approximately 100 months of the total effective sentence.[1]  By motion dated September 4, 2020, the Defendant seeks a sentence reduction to time served and his immediate release from the custody of the Bureau of Prisons ("BOP") pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (ECF No. 1272.)  On September 11, 2020, the Government filed a response in which it raises no objection to the motion and indicates that it will defer to the Court's discretion in ruling on the motion. (ECF No. 1277.)

**Discussion**

"It is well established that a court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Roberts*, No. 18-CR-528-5 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (quotation marks, alteration, and citation omitted).  Title 18 U.S.C. § 3582, provides in relevant part:

> the court, … upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)    extraordinary and compelling reasons warrant such a reduction . . . .

*Id*. § 3582(c)(1)(A)(i).  "Accordingly, in order to be entitled to relief under the statute, the defendant must both meet the exhaustion requirement[2] and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of his sentence." *United States v. Smith*, No. 3:16-CR-48 (MPS), 2020 WL 1903160, at *2 (D. Conn. Apr. 17, 2020) (quoting *United States v. McCarthy*,

---

[1] As the Defendant points out in his application, with good time credit, the Defendant has served, effectively, 116 months of the 144-month sentence.

[2] There is no dispute as to the exhaustion requirement. The Defendant has met his burden on this issue.

No. 3:17-CR-230 (JCH), 2020 WL 1698732, at *3 (D. Conn. Apr. 8, 2020) (alteration omitted)). "The defendant bears the burden of showing that [he] is entitled to a sentence reduction." *United States v. Gagne*, No. 3:18-CR-242 (VLB), 2020 WL 1640152, at *3 (D. Conn. Apr. 2, 2020). And even where the defendant demonstrates "that extraordinary and compelling reasons warrant such a reduction," the "reduction must be consistent with applicable policy statements issued by the U.S. Sentencing Commission." *Id.* at *2 (citing 18 U.S.C. § 3582(c)(1)(A)) (internal quotation marks omitted). Finally, "before compassionate release can be granted, the Court must consider the 18 U.S.C. § 3553 sentencing factors to the extent relevant." *Id*. "Therefore, a court must examine the same factors it did when it initially sentenced the defendant, including the nature and circumstances of the crime, the defendant's history and characteristics, and the multiple purposes of sentencing, such as providing just punishment, deterring crime, protecting the public from further crimes by the defendant, and providing the defendant with rehabilitation." *United States v. Dickerson*, No. 3:10-CR-227 (JAM), 2020 WL 4915561, at *2 (D. Conn. Aug. 21, 2020).

The applicable Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13. However, "[t]he Commission has not amended the 2016 policy statement since Congress passed the First Step Act in 2018," so it does not speak to motions filed by defendants.[3] *Smith*, 2020 WL 1903160, at *2 n.3. Accordingly, district courts generally consider the policy statement "not binding but . . . rather, helpful guidance." *Id.* (quoting, *inter alia*, *United States v. Almontes*, No. 3:05-CR-58 (SRU), 2020 WL 1812713, at *3 (D. Conn. Apr. 9, 2020)); *see also United States  v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1916773, at *2 (D. Conn. Apr. 20, 2020) (noting that courts may make a determination as to what qualifies as an "extraordinary and compelling

---

[3] "Previously it was only the BOP that could file a motion for sentence reduction, but Congress amended the law with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), in order to afford a defendant as well as the BOP the right to file a motion for sentence reduction." *United States v. Vence-Small*, No. 3:18-CR-00031 (JAM), 2020 WL 1921590, at *3 (D. Conn. Apr. 20, 2020).

3

reason" independently, but with Section 1B1.13 as a helpful guide). Following the policy statement's guidance, "the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a) . . . the court determines that," as relevant here: (1) "[e]xtraordinary and compelling reasons warrant the reduction"; (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. The Application Notes in the Commentary to the policy statement enumerate a number of specific circumstances which would constitute extraordinary and compelling reasons for purposes of the statute. Relevant to this Court's determination is that the Commission clearly contemplated that a variety of circumstances, other than those specifically articulated, might also warrant a sentence reduction. Application Note 1(D) to Section 1B1.13 contains a catch-all residual clause allowing for relief for "other" extraordinary and compelling reasons.

The Court concludes that each of the statutory criteria is satisfied. First, the dangers posed by COVID-19 in an institutional setting are well-known. *See, e.g.*, *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *8 (E.D. Pa. Apr. 1, 2020) (describing the greater risks of infectious disease spread within detention facilities and the rapid emergence of certain facilities as "COVID-19 hotspots"); *see also United States v. Salvagno*, No. 5:02-CR-51 (LEK), 2020 WL 3410601, at *4 (N.D.N.Y. Apr. 23, 2020), *reconsideration denied* (N.D.N.Y. June 22, 2020) (noting that "[p]risons are 'powder kegs for infection' and have allowed 'the COVID-19 virus to spread with uncommon and frightening speed'") (quoting *United States v. Skelos*, No. 15-CR-317, 2020 WL 1847558, at *1 (S.D.N.Y. Apr. 12, 2020) (alterations omitted)). And while the potential exposure to the virus is not, of itself, a basis for sentence reduction, for someone with the Defendant's medical conditions, the analysis is different. The literature from

the medical and scientific community is clear that certain underlying medical issues render a person at much higher risk of serious injury or even death if that person is diagnosed with COVID-19. *See, e.g.*, *McPherson v. Lamont*, No. 3:20-CV-534 (JBA), 2020 WL 2198279, at *2 (D. Conn. May 6, 2020) (identifying some of the underlying medical conditions that render individuals at higher risk for serious illness from COVID-19); *United States v. Ramirez*, No. 19 CR. 105 (LGS), 2020 WL 4577492, at *2 (S.D.N.Y. Aug. 6, 2020) (same). The defendant suffers from Right Bundle Branch Block—a heart condition which impacts the heart's ability to pump blood efficiently through the body, as well as hypertension and periodontitis, each of which *individually* has been identified as an underlying condition which could worsen the impact, and therefore the outcome, of a COVID-19 diagnosis. In combination, they clearly provide an extraordinary and compelling reason for a sentence reduction. *See, e.g.*, *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (finding that the defendant's age, "combined with his diabetes, hypertension, and obesity, satisfy" the "extraordinary and compelling reasons" requirement warranting compassionate release); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (agreeing with the defendant "that the COVID-19 pandemic, combined with his particular vulnerability to complications from COVID-19 because of his hypertension, constitutes an 'extraordinary and compelling reason' for his release"); *United States v. Rivernider*, No. 3:10-CR-222 (RNC), 2020 WL 2393959, at *1 (D. Conn. May 12, 2020) (concluding that "the risk posed to [the defendant's] health by the novel coronavirus constitutes an extraordinary and compelling reason justifying compassionate release" where the defendant suffered from heart disease, diabetes, and hypertension). And indeed, the Government agrees that "Vaughn's medical conditions put him at heightened risk for COVID-19,

thereby constituting an extraordinary and compelling reason for compassionate release." (Gov't's Resp. at 1.)

The policy statements found in the Commentary to Section 1B1.13 of the United States Sentencing Guidelines next counsel the Court to determine whether the Defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.  This is an individualized assessment that must be conducted on a case-by-case basis.  *See*, *e.g.*, *McCarthy*, 2020 WL 1698732, at *5 (releasing defendant sentenced to a 38-month term of imprisonment in January 2019 for armed bank robbery, finding that he did not pose a danger to the community because he previously "excelled" at a halfway house as "[h]e was compliant with all program rules and regulations") (internal quotation marks omitted); *Gileno*, 2020 WL 1916773, at *5 (finding that defendant convicted of wire fraud and tax evasion with about eight months left on his term of incarceration did not pose a danger to the community because he "will be on supervised release at home during the time he would have been incarcerated, and there is nothing in [the] record suggesting that he would be a danger to any other person or the community."); *cf. United States v. Gamble*, No. 3:18-CR-0022-4 (VLB), 2020 WL 1955338, at *1, *5–6 (D. Conn. Apr. 23, 2020) (denying sentence modification and finding the defendant a danger to the community—defendant had served less than 26 months of a 92-month sentence, had a significant criminal history (Category VI), had previously escaped custody, and had a cavalier attitude about his criminal possession of firearms).

While the Defendant's distribution of narcotics presented a danger to the community during the time period identified in the Second Superseding Indictment, the Government has confirmed the Defendant's representation that he has incurred only one disciplinary ticket during his many years of incarceration since then.  The Government has expressed some concern with the

nature of the infraction, which involved the recovery of illegal drugs from the Defendant's locker (*see* Gov't's Exs. A, B), as well as with the Defendant's failure to acknowledge the illegal substance in describing the incident through counsel.  The Defendant has clarified the basis for his representation and has also attached a letter submitted to Chief Judge Underhill in August 2020 in which the Defendant acknowledged that he was sanctioned for permitting another inmate access to his locker, who used it to store "work-out pills." (*See* ECF No. 1278-1.)   Regardless of the genesis of this incident, the Court agrees with the Government that "in view of Vaughn's clear conduct since 2017, the positive strides he has made in BOP programming, and the monitoring to which Vaughn will be subject while on supervised release, it is unlikely that Vaughn will pose a danger to others if granted compassionate release." (Gov't's Resp. at 2.)  Indeed, the Defendant has availed himself of many rehabilitative programs designed to support a successful re-entry into the community as a law-abiding citizen.  And certainly, the passage of time combined with the rehabilitative programming reduces the risk to the community perhaps previously posed by the Defendant.  *See also Almontes*, 2020 WL 1812713, at *8 (concluding that the defendant's "rehabilitation certainly counts heavily in his favor" even though it is not alone a sufficient basis for finding extraordinary and compelling reasons to grant compassionate release).

       Finally, the Court has considered the Section 3553(a) factors and concludes that they, too, support a reduction in sentence.  The Defendant has been incarcerated for approximately 100 months and could be eligible for release as early as March 2021. As noted, he has had a largely consistent behavioral record with the Bureau of Prisons and has taken substantial steps to improve his chances at a successful reintegration into the community.  Under all of the circumstances presented the Court is persuaded that the goals of sentencing are not undermined by reducing the Defendant's sentence to time served.

**Conclusion**

For all of these reasons, the Defendant's emergency motion for sentence reduction and immediate release is GRANTED. The Defendant's sentence is reduced to "time served." The Defendant shall be released as soon as practicable but no later than 5:00 p.m. on September 15, 2020. The Defendant is placed on Supervised Release subject to all conditions previously ordered. However, the conditions of Supervised Release are modified as follows: The Defendant shall reside with his mother Sandra Vaughn at her home in New Haven. Upon his release, the Defendant shall travel directly from the facility to this residence. The Defendant shall be on home detention for the first six (6) months of Supervised Release. He shall be permitted to leave the residence for employment, religious services, medical treatment, or for other reasons approved in advance by the United States Probation Office. He shall be subject to location monitoring for the first six (6) months of Supervised Release by whatever technology is deemed appropriate by the United States Probation Office.

The Clerk of Court is directed to provide a copy of this Order to the United States Marshals Service to be transmitted to the Bureau of Prisons. The Clerk of the Court is further directed to provide a copy of the Order to the United States Probation Office.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of September 2020.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE